Case No. 22-13642-HH

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

On Appeal from the United State District Court
for the Southern District of Florida

District Court Case No. 21-civ-61099-Smith
Bankruptcy Court Adv. Proc. No. 20-1255-SMG

_____

George P. Wagner, III,

       Appellant,

vs.

OHI Asset (VA) Martinsville SNF,
LLC, *et al.,*

       Appellees.

---

## BRIEF OF APPELLANT

---

Patrick S. Scott
GRAYROBINSON, P.A.
401 E. Las Olas Blvd., Suite 1000
Fort Lauderdale, FL  33301
Ph. (954) 761-8111
Fla. Bar No. 290025
patrick.scott@gray-robinson.com

Michael S. Hoffman
HOFFMAN, LARIN & AGNETTI, P.A.
909 North Miami Beach Blvd., Suite 201
North Miami, FL 33162
Ph. (305) 653-5555
Fla. Bar No. 41164
mshoffman@hlalaw.com

*Counsel for Appellant George P. Wagner, III*

*George P. Wagner III v.*
*OHI Asset (VA) Martinsville SNF, LLC, et al.*
Case No. 22-13642-HH

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellant George P. Wagner, III notifies the Court that the following individuals and corporations have an interest in the outcome of this appeal:

1.   Aiken, Leighton (Counsel for Appellee)

2.   BlackRock Fund Advisors (Shareholder in Omega)

3.   Ferguson Braswell Fraser Kubasta PC (Counsel for Appellee)

4.   Gray Robinson, P.A. (Counsel for Appellant)

5.   Hildreth, Mark D. (Counsel for Appellee)

6.   Hoffman, Larin & Agnetti, P.A. (Counsel for Appellant)

7.   Hoffman, Michael S. (Counsel for Appellant)

8.   OHI Asset (FL) Sebring, LLC (Appellee)

9.   OHI Asset (NC) Warsaw, LP (Appellee)

10.  OHI Asset (VA) Martinsville ALF, LLC (Appellee)

11.  OHI Asset (VA) Martinsville SNF, LLC (Appellee)

12.  Omega Healthcare Investors, Inc. (Principal of Appellees)

13.  Scott, Patrick S. (Counsel for Appellant)

14.  Shumaker, Loop & Kendrick, LLP (Counsel for Appellee)

*George P. Wagner III v.*
*OHI Asset (VA) Martinsville SNF, LLC, et al.*
Case No. 22-13642-HH

15.  Smith, Rodney (United States District Court Judge)

16.  The Vanguard Group, Inc. (Shareholder in Omega)

17.  Wagner, George P., III (Appellant)

## CORPORATE DISCLOSURE STATEMENT

Appellee OHI Asset (FL) Sebring, LLC is a foreign limited liability corporation. Appellee OHI Asset (NC) Warsaw, LP is a foreign limited partnership. Appellee OHI Asset (VA) Martinsville ALF, LLC is a foreign limited liability corporation. Appellee OHI Asset (VA) Martinsville SNF, LLC  is a foreign limited liability corporation.

The appellees have advised us from previous filings that their parent company is *Omega Healthcare Investors, Inc.*

The appellees have advised us from previous filings that publicly held companies *The Vanguard Group, Inc*. and *BlackRock Fund Advisors* each own 10% or more interest in their parent Omega Healthcare Investors.  We hereby certify that, except as noted, no publicly traded company or corporation has an interest in the outcome in the case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

The appellant desires oral argument, because the court may have questions about any cases where a court acting in its appellate capacity has found clear error in a lower court's decision on a state-of-mind issue.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ................................................C-1

CORPORATE DISCLOSURE STATEMENT ................................................C-2

STATEMENT REGARDING ORAL ARGUMENT ...........................................i

TABLE OF CONTENTS................................................................................ ii

TABLE OF AUTHORITIES ..........................................................................iv

I.      JURISDICTIONAL STATEMENT ...........................................................1

II.     STATEMENT OF ISSUES PRESENTED FOR REVIEW.......................2

III.    STATEMENT OF THE CASE ................................................................2

    A.      Summary of the Case ...........................................................3

    B.      Statement of Facts ...............................................................3

    C.      The Bankruptcy Case, its Procedural History, and Rulings.................4

    D.      The "False Oath" .................................................................5

        1. The Evidence ..................................................................... 5

        2. OHI's additional evidence...................................................9

            a.  The June 27 email..................................................9

            b. The May 30 emails and financial statement .........................11

            c. Significance of the accuracy of the debtor's bankruptcy
            schedules ...................................................................12

IV.     SUMMARY OF THE ARGUMENT ................................................13

V.      ARGUMENT....................................................................................14

    A.      Standard of Review .........................................................14

## TABLE OF CONTENTS - *CONTINUED*

**Page**

    B.      Elements of § 727(a)(4)(A)............................................................. 19

    C.      Application of Clearly Erroneous Standard to Bankruptcy Court Trial Decisions under Section 727(a)(4)(A) ........................20

    D.      By its findings of facts, the Bankruptcy Court did not err in determining that OHI failed to satisfy its burden under § 727(a)(4)(A) ...................................................................................24

VI.     CONCLUSION ........................................................................................28

CERTIFICATE OF COMPLIANCE ....................................................................31

CERTIFICATE OF SERVICE ...........................................................................31

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Anderson v. City of Bessemer City, N.C.,*
   470 U.S. 564 (1985) ................................................................ 15, 16, 18

Bankruptcy Court Adv.,
   Proc. No. 20-1255 ...................................................................... i

*Cohen v. McElroy (In re McElroy),*
   229 B.R. 483 (Bankr. M.D. Fla. 1998) ...................................... 19

*Concrete Pipe & Products v. Construction Laborer Pension Trust,*
   508 U.S. 602 .............................................................................. 16

*Gamble v. Brown (In re Gamble),*
   168 F.3d 442 (11th Cir. 1999) ................................................... 14

*Grant v. City of Los Angeles,*
   19 F.3d 27 (9th Cir. 1994) ......................................................... 17

*Grogan v. Garner,*
   498 U.S. 279 (1991) .................................................................. 20

*In re Brown,*
   108 F. 3d 1290 (10th Cir. 1997) ................................................ 23

*In re Burgess,*
   955 F.2d 134 (1st Cir. 1992) ................................................. 18, 21

*In re Bush,*
   62 F.3d 1319 (11th Cir. 1995) ................................................... 15

*In re Carp,*
   340 F. 3d 15 (1st Cir. 2003) ...................................................... 24

*In re Financial Federated Title & Trust, Inc.,*
   309 F. 3d 1325 (11th Cir. 2002) ................................................ 14

*In re Issac Leaseco, Inc.,*
   389 F.3d 1205 (11th Cir. 2004) ................................................ 14

## TABLE OF AUTHORITIES - *CONTINUED*

<u>Cases</u>                                                                    <u>Page(s)</u>

*In re Jennings,*
  533 F. 3d 1333  (11th Cir. 2008) ................................................................. 18, 20

*In re Krehl,*
  86 F.3d 737 (7th Cir. 1996) ...........................................................................18

*In re Mama D'Angelo, Inc.,*
  55 F.3d 552 (10th Cir. 1995) .........................................................................17

*In re Miller,*
  39 F.3d 301 (11th Cir. 1994) .........................................................................22

*In re Monetary Group,*
  2 F.3d 1098 (11th Cir. 1993) .........................................................................16

*In re Muscatell,*
  113 B.R. 72 (Bankr. M.D. Fla. 1990)............................................................29

*In re Optical Technologies, Inc.,*
  425 F.3d 1294 (11th Cir. 2005) .....................................................................14

*In re Reider,*
  31 F. 3d 1102 (11th Cir. 1994) ......................................................................15

*In re Wines,*
  997 F.2d 852 (11th Cir. 1993) .......................................................................22

*Kentile Floors, Inc. v. Winham,*
  440 F.2d 1128 (9th Cir.1971) ........................................................................29

*Keyword Rockstar, Inc. v. Schultz,*
  815 Fed. Appx. 160 (9th Cir. 2020) ..............................................................21

*Krasnov v. Dinan,*
  465 F. 2d 1298 (3d Cir. 1972) .......................................................................17

*Local Loan Co. v. Hunt,*
  292 U. S. 234 (1934) .....................................................................................28

## <u>TABLE OF AUTHORITIES</u> - *CONTINUED*

<u>Cases</u>                                                                 <u>Page(s)</u>

*Menotte v. Cutaia (In re Cutaia),*
  410 B.R. 733 (Bankr. S.D. Fla. 2008) ................................................19

*Northern Trust Co. v. Garman (In the Matter of Garman)*,
  625 F.2d 755 (7th Cir.1980) ...............................................................29

*Palmacci v. Umpierrez*,
  121 F.3d 781 (1st Cir.1997) ................................................................24

*Parts & Electric Motors, Inc. v. Sterling Electric, Inc.,*
  866 F.2d 228 (7th Cir. 1988) ..............................................................17

*Pinnacle Yacht Sales, Inc. v. Offer (In re Offer),*
  2007 Bankr. LEXIS 1885, *12 ...........................................................19

*Pullman-Standard v. Swint,*
  456 U.S. 273 (1982) ............................................................................22

*Rush v. JLJ Inc.,*
  988 F.2d 1112 (11th Cir.1993) ...........................................................15

*Southern Pacific Communications Co. v. American Telephone & Telegraph Co.,*
  740 F.2d 980 (D.C. Cir. 1984)............................................................17

*Stano v. Butterworth,*
  51 F.3d 942 (11th Cir. 1995) ..............................................................18

*Stroock & Stroock & Lavan v. Hillsborough Holdings Corp.* (*In re Hillsborough
  Holdings Corp.*),
  127 F.3d 1398 (11th Cir. 1997) ..........................................................16

*Swicegood v. Ginn*,
  924 F.2d 230 (11th Cir. 1991) ............................................................19

*United States v. Foster*,
  155 F.3d 1329 (11th Cir. 1998)...........................................................16

*United States v. Greer*,
  53 F.3d 334 (7th Cir. 1995) ................................................................17

## TABLE OF AUTHORITIES - *CONTINUED*

**Cases**                                                          **Page(s)**

*United States v. Peters*,
  403 F.3d 1263 (11th Cir.2005) ...........................................................18

*United States v. U.S. Gypsum*,
  333 U.S. 364 (1984) ..........................................................................15

*Williamson v. Fireman's Fund Ins. Co.,*
  828 F.2d 249 (4th Cir.1987) .............................................................21

**Statutes**

11 U.S.C. § 727 ..................................................... 20, 22, 23, 24, 28

11 U.S.C. § 727(a)(2) ........................................................... 5, 21

11 U.S.C. § 727(a)(3) ......................................................... 20, 21

11 U.S.C. § 727(a)(4) ............................................................ passim

28 U.S.C. § 158(d) ...................................................................1

**Rules**

Fed. R. App. P. (4)(a)(1)(A)  ................................................1

Fed. R. App. P. (6)(b)(1) ......................................................1

Fed. R. App. P. (6)(b)(2)(A) .................................................1

Fed. R. App. P. 27(d)(2)(A) ................................................31

Fed. R. App. P. 32(a)(5) ......................................................31

Fed. R. App. P. 32(a)(6) ......................................................31

Fed. R. App. P. 32(f) ...........................................................31

Fed. R. App. P. 12.1 ...............................................................1

Fed. R. Bankr. P. 8013 ...........................................................1

## TABLE OF AUTHORITIES - *CONTINUED*

**Rule**                                                                    **Page(s)**

Fed. R. Bankr. P. 8022 ...............................................................................1

Fed. R. Civ. P. 26.1 .................................................................................1

Fed. R. Civ. P. 52 ...................................................................................22

Fed. R. Civ. P. 52(a)(6) ...........................................................................1

# I.  JURISDICTIONAL STATEMENT

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d) because it is an appeal from a "final decision[], judgment[], order[], [or] decree[s] entered under subsections (a) and (b)."  Subsection (a) gave the district court jurisdiction over appeals from "final judgment, orders, and decrees" of the bankruptcy court.

Both parties to this appeal have already filed separate jurisdictional statements in response to a jurisdictional question posed by this court as to the "finality" of the district court's order.  The Federal Rules of Appellate Procedure control.  Rule 4(a)(1)(A), made applicable to bankruptcy appeals by Rule 6(b)(1), provides that the appeal is commenced by a notice filed within 30 days, as was done here.  While Rule 6(b)(2)(A) provides that finality is postponed by post judgment motions under Bankruptcy Rule 8022, the parties agreed in their responses to the court's jurisdictional question that Mr. Wagner's motion for clarification was not a Rule 8022 motion.  For this reason, the district court could not have granted the motion for clarification without first sending an indicative ruling to this court for a limited remand under Rule 12.1.  As it turned out, the district court denied the motion for clarification.  This court's jurisdiction, invoked by the October 28, 2022 notice of appeal from the September 30, 2022 district court final order, is unaffected by the

post-judgment events in district and bankruptcy courts.[1]

## II. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the district court applied the incorrect legal standard in concluding that a debtor's knowing omission of an asset from the debtor's schedules is necessarily a knowing and fraudulent omission of the asset.

2.    Whether the bankruptcy court was clearly erroneous in finding that the appellant did not knowingly and fraudulently conceal an ownership interest in a horse, or income from renting out the horse on his bankruptcy schedules and statement of financial affairs.

## III.  STATEMENT OF THE CASE

Throughout this brief, the appellant, George P. Wagner III—the debtor below—will be called "**Mr. Wagner**," and the appellees, OHI Asset (FL) Sebring, LLC, OHI Asset (NC) Warsaw, LP, OHI Asset (VA) Martinsville ALF, LLC, and OHI Asset (VA) Martinsville SNF, LLC—the creditors in the bankruptcy case—will be called "**OHI**."

---

[1]   The bankruptcy court conformed its overturned judgment to the district court's mandate.  Because the bankruptcy court did not, and could not, take any but ministerial action, its actions also have no effect on the Court of Appeals' jurisdiction to her this appeal.

2

## A. Summary of the Case

The bankruptcy court, charged with granting (or not granting) discharges of debts, determined after trial that Mr. Wagner was entitled to a discharge, in the face of his omitting from his bankruptcy schedules an alleged equitable interest in his estranged wife's checking account and an alleged ownership of a horse, and failing to specify in his schedules that income from renting the horse in 2019 was deposited into his and his estrange wife's joint bank account.   OHI had asserted that the act of signing the schedules with these omissions was "knowing and fraudulent," so that the debtor's discharge should be denied under 11 U.S.C. § 727(a)(4)(A).  After trial, the bankruptcy court found for Mr. Wagner in finding and conclusions recited into the trial transcript.  T. 310-319.

The district court affirmed the bankruptcy court's findings as to the wife's checking account, but reversed overall, finding that Mr. Wagner knowingly and fraudulently concealed the horse and the horse rental income from his schedules. *Order Vacating Judgment*, p. 11. (the "District Court Order"). The district judge directed the bankruptcy court to enter an order concluding that Mr. Wagner is not to receive a discharge of his debts.  *Id*.

## B. Statement of Facts

References to the record on appeal shall be to the record transmitted by the bankruptcy court clerk to the district court [DE 8 and DE 12 in the district court, DE 8 being divided into 7 subparts labeled DE 8-1 through DE 8-6 and DE 8-8, and DE

12 being divided into 2 subparts being DE12-1 and DE 12-2], and transmitted from the district court to this court. They shall be designated as "R. 8-[subpart]:[page] of [total pages in subpart]" or "R. 12-1: [page] of 941."

The transcript of the first day of trial is at DE 9 and the transcript of the second day of trial is at DE 10, continuing the same pagination as the first day. The transcripts shall be designated as T. [page]:[lines].

### C.    The Bankruptcy Case, its Procedural History, and Rulings

Mr. Wagner filed a chapter 7 bankruptcy petition on December 6, 2019 (the "Petition Date"). R. 8-3:32-38 of 513, Stipulation ¶3. He filed his initial bankruptcy schedules of assets and liabilities and his statement of financial affairs. R. 8-3:208-280 of 513, and later he filed amended bankruptcy schedules and an amended statement of financial affairs, R. 8-3:285-321 of 513[2] (we refer to all of these documents as the schedules). A month later, OHI—creditors of Mr. Wagner commenced an adversary proceeding against him, claiming that his bankruptcy schedules contained "false oaths" such that his discharge should be denied under 11 U.S.C. § 727(a)(4)(A). R. 8-3:405-414 of 513.[3]

During the months prior to filing bankruptcy, Mr. Wagner and his wife Melissa separated, and a divorce proceeding was commenced, which was pending at the time

---

[2] The revisions made in the Amended Schedules were minor and not relevant to the issues in this appeal.

of trial in the adversary proceeding. R. 8-3:462-463 of 513. OHI's original complaint charged Mr. Wagner with having made fraudulent transfers of monies from his and Melissa's joint bank account to Melissa's individual account, and also with concealing an "equitable interest" in Melissa's individual account. The bankruptcy court, at the trial, ruled against OHI on these issues, and OHI did not appeal the finding of no fraudulent transfer. The district court agreed with the bankruptcy court on the finding of no false oath in the schedules as to any equitable interest in the estrange wife's account,[4] and OHI did not cross-appeal that issue to this court. Because they have been adjudicated and are not on appeal to this court, we will not discuss OHI's fraudulent transfer claim under 11 U.S.C. § 727(a)(2) or the portion of OHI's Section 727(a)(4)(A) claim related to the alleged interest in the wife's account.

## D.    The "False Oath"

### 1.  The Evidence

OHI claimed in its amended complaint that Mr. Wagner failed to list in his schedules income received from the lease of a riding horse named "Clover" in 2019 and this failure was both knowing and fraudulent. The undisputed evidence at trial on this subject follows:

- The Wagners' daughter Anderson Wagner is a competitive horse rider. She is the only member of the family to ride horses. T. 178:22-179:2.

---

[4] DE 1, Order Vacating Final Judgment, p. 8

- On February 5, 2016, when Anderson was still a minor, the Wagners' purchased Clover for Anderson to ride. T. 226:3-17.

- The bill of sale for Clover identified George Wagner as the purchaser. The bill of sale stated upon payment of the purchase price "buyer and seller agree to promptly execute all necessary papers and take all necessary steps to transfer ownership and registration of the animal to buyer at no cost to the seller." R. 12-1:775-776 of 941.

- Mr. Wagner never received documents evidencing ownership of Clover such as a title or deed. T. 226:18-227:2. However, as Judge Grossman noted, "plaintiffs acknowledge in their argument that unlike real estate or a motor vehicle, there is no title to a horse is not required by law to be memorialized in any written document."[5]

- On February 9, 2016, four days after the bill of sale was signed, Clover was registered with the United States Equestrian Federation ("USEF"), with daughter Anderson as "owner." R. 8-3:434-435 of 513; T.228:18-229:21. This was years prior to when Mr. Wagner began experiencing financial problems. T. 229:23-230-10.

- It was Mr. Wagner's understanding that registering Clover in Anderson's name with USEF made her Clover's owner. T.231:8-21. OHI gained

---

[5] T. 315: 21-24

access to frank emails between Mr. Wagner and his attorney which they introduced into evidence. These emails uniformly supported the bankruptcy court's ultimate finding that Mr. Wagner believed Anderson to be the owner of Clover. *See e.g.*, R., 12-1:471 of 941 (prepetition email noting that "Clover had been gifted to Anderson some time ago."); R. 12-1: 479 of 941 (prepetition email from bankruptcy counsel to Mr. Wagner referring to the "horse owned by your daughter.")

- Like Mr. Wagner, both Melissa and Anderson also understood Anderson to be the owner of Clover. T.99:11-14 (Melissa explaining that Anderson owned Clover due to USEF registration); T.188:4-20 (Anderson explaining that she owned Clover due to USEF registration).

- Since Anderson was initially a minor and then later a freshman away at college, George and Melissa managed the financial aspects of the horse for her. T.105:13-106:3 (explaining that Anderson did not have income and that she only used her college bank account for birthday and Christmas gifts and the like).

- In 2019, while Anderson was away at college, Clover was leased to another rider. R. 12-1:482 of 941. The form lease was sent by the stable to Mr. Wagner for signature, and he signed it, acting as he believed on Anderson's behalf. T. 259: 4-6. The lease had a boilerplate provision stating that the lessor had title to Clover and that the signer could execute the lease on behalf of the lessor. Mr. Wagner did not recall reading this provision and reiterated that he believed he was signing

the lease on behalf of Anderson. T. 259:1-23. When the lease renewed in 2020, Melissa—now filed for divorce—insisted that the lease be changed to Anderson's name. T. 64:3-64:17; R. 12-1:777 of 941.

• After Clover was purchased in 2016, Mr. Wagner was named on Clover's insurance policy since Anderson was still a minor. T. 57:9-12 (detailing insurance policy information); T. 53:22-54:1 (confirming Anderson was a minor until 2017). In May 2019—the month before she filed for divorce—Melissa requested that the insurance policy on Clover be changed to Anderson's name. T. 57:12-58:23; R. 12-1: 466 of 941 (email from Melissa to insurer). She testified that she requested the change since she would soon no longer be controlling her husband's finances and was concerned that Mr. Wagner would receive and use any insurance proceeds for his own benefit rather than for the care of Anderson's horse. T. 57:17-58:11; T.63:23-64:17 (Melissa explaining that her request the insurance policy be changed for "asset protection" referred to protection of Anderson's asset, i.e., Clover). Following receipt of Melissa's email, the insurer made the change. R. R. 8-3:32-38 of 513, Stipulation, ¶23.

• Schedule A/B of the schedules requires that a debtor state if he has a legal or equitable interest in assets, divided into more than dozen categories, one of which is non-farm animals. Schedules, item 13. *If* he owned a horse at the time of his bankruptcy filing, he should have listed the horse.

8

- Question 4 of the Statement of Financial Affairs requires that a debtor "[f]ill in the amount of income you received from all jobs and all businesses, including part-time activities." Question 5 requires that the debtor state "any other income," including "rental income" among the examples. Mr. Wagner stated on the form that he had income in 2018 and 2019 but stated the amounts as "unknown." He testified he had not completed his 2018 income tax return and had not yet ascertained his total income for the year of the filing, 2019. T. 222:18-223:14 (noting also that the Mr. Wagner did specify the amount of his 2017 annual income, since he had completed his tax return for that year).

### 2.    OHI's additional evidence

OHI introduced two incomplete sets of documents which it claims, read together or separately, prove that Mr. Wagner was lying when he testified that he did not regard that he had any interest in Clover or the 2019 horse rental income, and that he was concealing these items on his schedules, as fraudulent debtors do, in order to prevent his bankruptcy trustee from discovering, evaluating, and monetizing the assets for his bankruptcy estate.

### b.  The June 27 email

OHI relied at trial and on appeal on a June 27, 2019 email (the "June 27 Email") from George to Melissa in which Mr. Wagner stated "...my only concern was you keeping hold of as much as possible, and with bankruptcy me having as

9

little as possible." R. 8-5:102 of 498. OHI described this as a "smoking gun" which exposed Mr. Wagner's hidden scheme to transfer assets, an issue now largely resolved in Mr. Wagner's favor with the *district court's* affirmation of the bankruptcy court's finding that Mr. Wagner was *not* hiding any equitable interest in the funds transferred from the joint account to Melissa's account. But a review of the entire email string, R. 8-5:102-104 of 498, and the Wagners' explanation consistent with the entire string, showed that the June 27 email was part of a pre-bankruptcy marital settlement negotiation discussing Melissa retaining as many assets as possible in exchange for a lower alimony, at a time when George's financial situation was bleak. T.203:6-204:11; T.205:18-206:16; T.207:1-5.

OHI claims the email was reflective of an ongoing effort by Mr. Wagner to divest or hide his assets, but it could not identify *any* transfer or transaction that Mr. Wagner could have been referring to. The bank account transfers by Melissa began five years earlier, and Clover had been registered in Anderson's name four years earlier. T.207:14-17 (testimony from the Debtor); T. 96:13-18 (testimony from Melissa). The bank account transfer and Clover's registration had also occurred years before Mr. Wagner began having financial difficulties. T. 229:23-230-10.

The bankruptcy court explained that the June 27, 2019 email:

> needs to be viewed in the context of the Wagner's impending divorce, as well as in light of the fairly extensive disclosures and otherwise thoroughness of Mr. Wagner's bankruptcy schedules and statement of Financial Affairs...

> When both emails are viewed in the context of the other evidence presented, I find that there actually has been no evidence that would allow me to conclude that the debtor acted with actual intent to hinder, delay or defraud his creditors, or an officer of the estate.

T. 313: 4-9, 13-18.

### b.    The May 30 emails and financial statement

OHI introduced an unsigned personal financial statement given in confidential state court mediation, including a "horse - $0." R. 8-6: 57 of 498. It also introduced well as an email from an employee, Michael Marshall to Mr. Wagner's attorney referring to the financial statement. R. 12-1:471 of 941. The May 30, 2019 email states:

> See attached for your review, edits and discussion, the Mustang is valued using Kelley Blue Book and according to George, the horse has no real value. Per my discussion with George these are the only assets listed solely in his name.

Mr. Wagner testified that he did not see the financial statement before it was sent to OHI, and that he certainly wouldn't have included the horse. T. 168:3-23. Not mentioned by the district judge were the emails of the same date that show that Mr. Wagner's attorney sought to correct Mr. Marshall: "George indicated that the horse was gifted to Anderson some time ago." R. 12-1: 471 of 941. Mr. Wagner testified that he didn't draft or sign the personal financial statement, which was prepared by his attorney. Mr. Wagner speculated that perhaps the attorney listed an interest in the horse valued at $0 because he was no longer its owner. T. 170: 14-15.

11

### c.   Significance of the accuracy of the debtor's bankruptcy schedules

The bankruptcy court credited Mr. Wagner for the extensive efforts he put into preparation of his schedules before filing for bankruptcy. He retained a professional appraiser to value his household goods and furnishings and attached the resulting appraisal report to the schedules. T. 219:12-220:18. He brought his wristwatches to a local jeweler to obtain a third-party valuation. T. 220:19-10. He scheduled cases of wine he owned on his Schedule B, see R. 8-3:212 of 513, and cases of wine he stored for a family member on his Statement of Financial Affairs R. 8-3:212, 278 of 513. To distinguish which wine was owned and which was stored, he inventoried each case and took pictures for the Chapter 7 Trustee to review. T. 221:23-222:18. Mr. Wagner also disclosed Melissa's transfers from the joint bank account to her individual checking account on his Statement of Financial Affairs.  R. 8-3:276 of 513.

The evidence demonstrated that the bankruptcy trustee was able to fully administer the case with minimal discovery and no contested litigation. R. 8-8:151 of 195 (settlement agreement between Mr. Wagner and the trustee; R. 8-8:174 of 195 (settlement agreement between Melissa and Anderson and the trustee). This evidence led the bankruptcy court to find that the schedules were an "extensive and thorough" product and represented an honest attempt to make a full disclosure of his assets and financial affairs. T. 317:3-7; T. 313:4-9.  The court cited the pattern of forthrightness

as bolstering the credibility of Mr. Wagner's explanation that he did not schedule an interest in Clover or the rental payments because he did not consider himself to be Clover's owner, concluding "[i]f Mr. Wagner had any thought or concern that he had some interest in the horse, given how extensive and thorough his schedules were otherwise, I'm convinced he certainly would have listed it on his schedules." T. 317:3-7.

## IV.  SUMMARY OF THE ARGUMENT

To show both the debtor's knowledge of an asset or income and fraudulent intent in omitting it from his schedules was the creditor's burden of proof, and it was the bankruptcy court's—not the district court's—exclusive province to hear and determine these issues.  The district court, and indeed this court, may disagree with the bankruptcy court's findings, but they may not overturn them except to the extent the findings were "clearly erroneous."   This is particularly so where the bankruptcy judge has conducted a trial and observed the candor and demeanor of key witnesses whose testimony is available to appellate courts only in the form of verbal transcripts, and especially so where the dispositive issue in the case is the principal witness's state of mind, that is, whether Mr. Wagner acted with fraudulent intent in omitting the horse and its rental income.

In applying the Supreme Court's standard a lower court's findings are clearly erroneous only when the appellate court is left with the definite and firm conviction that a mistake has been committed, the district court cannot favor inferential

subsidiary facts over plausible explanations of those facts by witnesses that the lower court found credible in determining an ultimate fact, particularly when the ultimate fact was one of the witness's state of mind.  The bankruptcy court's findings fell within the range of rational findings that one could make based on the presentation conflicting evidence at trial, and therefore were not clearly erroneous.  Mr. Wagner should receive his discharge.

## V.  ARGUMENT

### A.  Standard of Review

In the bankruptcy context, the Court of Appeals sits "as a 'second court of review' and thus 'examines independently the factual and legal determinations of the bankruptcy court,'" employing the same standards of review as the district court. *In re Optical Technologies, Inc.,* 425 F.3d 1294, 1299-1300 (11th Cir. 2005) (quoting *In re Issac Leaseco, Inc.,* 389 F.3d 1205, 1209 (11th Cir. 2004)). Consequently, the circuit court reviews legal conclusions by either the bankruptcy court or the district court de novo and the bankruptcy court's findings of fact for clear error. *In re Financial Federated Title & Trust, Inc.,* 309 F. 3d 1325, 1328-29 (11th Cir. 2002).

Factual findings will not be overturned unless clearly erroneous. *Gamble v. Brown (In re Gamble)*, 168 F.3d 442, 444 (11th Cir. 1999).  The district court cannot make independent factual findings in a bankruptcy appeal, so the court of appeals

sitting as a second appellate court also reviews the bankruptcy court's factual determinations under the "clearly erroneous" standard. *In re Reider,* 31 F. 3d 1102, 1104 (11th Cir. 1994) (citing *Rush v. JLJ Inc.,* 988 F.2d 1112, 1116 (11th Cir.1993)).

The Supreme Court saw fit to include a stronger statement in both the Civil Procedure Rules and the Bankruptcy Rules:

> Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.

Fed. R. Civ. P. 52(a)(6), made applicable to bankruptcy appeals by Fed. R. Bankr. P. 7052 (and previously contained in Fed. R. Bankr. P. 8013).

The burden to show clear error is on the party seeking reversal of the bankruptcy court's findings. *In re Bush*, 62 F.3d 1319, 1322 (11th Cir. 1995).

A factual finding is clearly erroneous only when the appellate court, after reviewing all the evidence is "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum*, 333 U.S. 364, 395 (1984); *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). This deference to the trial court extends both to findings based on witness credibility and factual findings based on documentary evidence. *Id*. at 574, 105 S. Ct. at 1511–12.

A definite and firm conviction by the reviewing court is not to be merely a substitution of the district court's view of the evidence in place of the bankruptcy court's. The Supreme Court has described the clearly erroneous standard as being

15

"significantly deferential" to the trial court's findings. *Concrete Pipe & Products v. Construction Laborer Pension Trust,* 508 U.S. 602 U.S. 624 (1993). So long as "the evidence has two possible interpretations, the [trial] court's choice between them cannot be clearly erroneous." *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir. 1998). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson* at 573–74. Once the district court finds one ground to support the bankruptcy judge's findings, it need not consider all the issues raised by the appellants and thus become "mired down in a legal bog." *In re Monetary Group*, 2 F.3d 1098, 1103 (11th Cir. 1993).

While this Court has not elucidated further standards beyond those in the Supreme Court's *U.S. Gypsum* and *Anderson* decisions, this Court has described the clearly erroneous standard as "a very high standard, and one we would rarely be likely to find." *Stroock & Stroock & Lavan v. Hillsborough Holdings Corp.* (*In re Hillsborough Holdings Corp.*), 127 F.3d 1398, 1401 (11th Cir. 1997). As one Court of Appeals colorfully explained,

> …under the clearly erroneous standard, we cannot meddle with a prior decision of this or a lower court simply because we have doubts about its wisdom or think we would have reached a different result. To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.

16

*Parts & Electric Motors, Inc. v. Sterling Electric, Inc.,* 866 F.2d 228, 233 (7th Cir. 1988).

Those cases where courts have properly found "clear error" in a lower court's fact-finding involve an irreconcilable conflict between the underlying historical facts and the lower court's development of and reliance on the facts, that is, where the trial court's exposition of both the historical facts and the ultimate fact is not within permissible reasoning. While courts of appeal are naturally reluctant to define the limits of the trier-of-facts' range of permissible reasoning, one court has further explained this principle. "It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan*, 465 F. 2d 1298, 1302 (3d Cir. 1972). Other courts of appeal that have expounded on the *U.S. Gypsum-Anderson* principle have adopted the Third Circuit's language, citing the *Krasnow* decision. *In re Mama D'Angelo, Inc.,* 55 F.3d 552, 555 (10th Cir. 1995); *United States v. Greer*, 53 F.3d 334 at *1 (7th Cir. 1995) (unpublished); *Grant v. City of Los Angeles,* 19 F.3d 27 at *3 (9th Cir. 1994) (unpublished); *Southern Pacific Communications Co. v. American Telephone & Telegraph Co.,* 740 F.2d 980, 998 (D.C. Cir. 1984).

The honesty of witnesses is in a special category in a reviewing court's deference to trial courts. In applying the clearly erroneous standard, the reviewing

17

court "will give *even greater deference* to fact findings of the [trial] court that are based on determination of the credibility of witnesses." *Stano v. Butterworth,* 51 F.3d 942, 944 (11th Cir. 1995) (emphasis supplied) (citing *Anderson,* 470 U.S. at 575, 105 S. Ct. at 1512). Rule 52(a)(6) of the Federal Rules of Civil Procedure (made applicable in bankruptcy proceedings by Fed. R. Bank. P. 7052) instructs that in determining whether the lower court's fact finding was clearly erroneous, "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." This is because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City,* 470 U.S. 564, 575, 105 S. Ct. 1504, 84 L.Ed.2d 518 (1985) (discussing clearly erroneous standard under the Federal Rules of Civil Procedure).

Deference to the bankruptcy court's findings is "particularly appropriate" in cases involving fraudulent intent because the intent determination will often depend on that court's "assessment of the debtor's credibility." *In re Jennings*, 533 F. 3d 1333, 1338 (11th Cir. 2008) (Section 727(a)(2) case); *In re Burgess*, 955 F.2d 134, 137 (1st Cir. 1992) (Section 727(a)(4)(A) case); *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996) (Section 727(a)(2) case). *See also United States v. Peters*, 403 F.3d 1263, 1270 (11th Cir.2005) (recognizing that "[a]ssessing witness credibility is uniquely the function of the trier of fact").

18

**B.    Elements of § 727(a)(4)(A)**

11 U.S.C. § 727(a)(4)(A) provides:

> (a)    The court shall grant the debtor a discharge, unless...
>
> (4)    the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A)    made a false oath or account;....

"The purpose of § 727(a)(4) is to ensure that adequate information is available to those interested in administration of the estate without need of examinations or investigations to determine whether the information is true in the bankruptcy petition." *Pinnacle Yacht Sales, Inc. v. Offer (In re Offer),* 2007 Bankr. LEXIS 1885, *12, (Bankr. S.D. Fla. 2007, Adv. Pro. No. 06-1480-JKO, May 25, 2007). "Section 727(a)(4) was established to ensure that the trustee and the creditors would receive reliable information in order to assist the trustee in the administration of the estate." M*enotte v. Cutaia (In re Cutaia),* 410 B.R. 733, 741 (Bankr. S.D. Fla. 2008).

To sustain an objection under § 727(a)(4)(A), a plaintiff must prove "(1) the debtor made a statement under oath; (2) such statement was false; (3). the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Cohen v. McElroy (In re McElroy)*, 229 B.R. 483, 488 (Bankr. M.D. Fla. 1998). *See also Swicegood v. Ginn*, 924 F.2d 230,

232 (11th Cir. 1991) (stating "[t]o justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material.").

In a Section 727 action, the objecting party must prove all elements of the claim by a preponderance of the evidence. *In re Jennings,* 533 F. 3d 1333, 1339 (11th Cir. 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

### C.    Application of Clearly Erroneous Standard to Bankruptcy Court Trial Decisions under Section 727(a)(4)(A)

Some portions of Section 727(a) require the denial of a discharge for actions regardless of fraudulent intent.  See, for example, Section 727(a)(3) ("fail[ure] to keep or preserve recorded information"), 727(a)(5) ("fail[ure] to explain satisfactorily…any loss of assets"), and 727(a)(6) ("refus[al]…to obey any lawful order of the court").  To meet the clearly erroneous standard in such cases would require only that the reviewing court determine an objective fact outside the debtor's state of mind.

Section 727(a)(4) is different.  It requires a showing of both the debtor's knowledge of his misstatement or omission and his *fraudulent intent* in doing so.  While every judge knows that proof of fraudulent intent must ordinarily depend not on admissions but on extrinsic facts that prove the defendant's state of mind.  However, the judge must consider *all* the evidence, taking into account credible testimony that supplies context and explanation.  Even what first appears to be a smoking gun may, from another angle, turn out to be a cigar.

20

Courts must be especially reluctant to find clear error in decisions made on the credibility of the witnesses' explanations.  In *In re Burgess*,  955 F.2d 134 (1st Cir. 1992), the bankruptcy court granted the debtor a discharge after a trial of the objecting creditor's claims under Sections 727(a)(2), 727(a)(3) and 727(a)(4).  The creditor pointed to no evidence which necessarily showed the debtor was lying in his explanation of his omission of income from his schedules—an explanation accepted by the bankruptcy court despite the evidence that the debtor did indeed receive the income. Affirming both the bankruptcy and district courts, the court of appeals explained that "[b]ecause a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor, deference to the bankruptcy court's factual findings is particularly appropriate." *Id. at* 137 (citing *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 252 (4th Cir.1987), also a Section 727(a)(4)(A) case).

In *Keyword Rockstar, Inc. v. Schultz,* 815 Fed. Appx. 160 (9th Cir. 2020), a Ninth Circuit panel reversed the Ninth Circuit Bankruptcy Appellate Panel—which upon its review of the trial record had found that the debtor's mental disabilities caused him to make the false statements on his schedules—and reinstated the bankruptcy court's decision which had found fraudulent intent.  The court of appeals, in finding no clear error, noted that the BAP had not identified an irreconcilable

21

inconsistency between the uncontestable facts noted by the BAP and the bankruptcy court's "permissible reasoning" as to those facts. *Id.* at 162.

Both historical and conclusory facts are determined under the clear error standard. "Rule 52 broadly requires that findings of fact not be set aside unless clearly erroneous. It does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous. It does not divide facts into categories; in particular, it does not divide findings of fact into those that deal with 'ultimate' and those that deal with 'subsidiary' facts." *Pullman-Standard v. Swint*, 456 U.S. 273, 287 (1982).

Under the clearly erroneous standard, this Court will find no clear error in a bankruptcy court's decision, after trial, to reject the creditor's Section 724(a)(4) claim despite the fact that the debtor listed the value of an asset at one-third its value, where the bankruptcy court had given much weight to the debtor's diminished mental capacity. *In re Wines*, 997 F.2d 852, 857 (11th Cir. 1993). The Court will also reverse the district court and reinstate a bankruptcy court's granting of a discharge where the bankruptcy court's acceptance of the debtor's explanation at trial, and its consequent finding that the debtor did not act with fraudulent intent, were within the permissible range of ultimate fact finding. *In re Miller,* 39 F.3d 301, 307 (11th Cir. 1994) (reinstating bankruptcy court decision finding no proof of fraudulent intent in a Section

727(a)2) case where the debtor gave "plausible reasons" why his valuation of transferred assets was "at odds" with the opposing party's evidence).

More than a thousand court decisions have been published regarding the granting or denial of discharge under Section 727(a) of the Bankruptcy Code, including hundreds of appellate decisions.  It is not difficult to find cases where district courts have reversed a bankruptcy court's ruling on discharge, even reversing rulings made after trial, though such reversals are uncommon and they generally are in favor the debtor.  Reversals on the facts involve the bankruptcy court's misapplication of the proper legal standard to the facts, or its failure to consider or accept plain facts that are necessarily dispositive of the case (regardless of the other party's evidence and testimony).  An example is *In re Brown,* 108 F. 3d 1290 (10th Cir. 1997), where the court of appeals reversed both the district and bankruptcy courts as to the false-oath claim under Section 727(a)(4)(A), finding that the underlying facts did not support the bankruptcy court's denial of discharge; the decision turned on the appellate court's conclusion that the "pattern of non-disclosure" essential to the bankruptcy court's ultimate finding of fraudulent intent did not exist.

However, we have searched without success for any decision of a court of appeals—or frankly, even a district court—that has found clear error solely on the basis of evidence that may *contribute to an inference* of fraudulent intent, where the bankruptcy court credited the explanation of witnesses as outweighing the probative

23

value of the inculpatory evidence. That is not to say that clear error on state-of-mind cannot be shown, but it cannot be shown based merely on inferential evidence where the rebutting testimony is found to be credible. *See In re Carp*, 340 F. 3d 15, 29 (1st Cir. 2003) (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 790 (1st Cir.1997) (in a Section 727 case, "[e]ven when the totality of the circumstances might plausibly support an inference of skullduggery, the bankruptcy court's contrary finding must be credited unless the evidence is so one-sided as to compel the inference of fraud.").

**D.    By its findings of facts, the Bankruptcy Court did not err in determining that OHI failed to satisfy its burden under § 727(a)(4)(A).**

The bankruptcy court's finding that Mr. Wagner did not knowingly and fraudulently fail to list Clover or income from the lease of Clover is well supported by the record. Mr. Wagner, his ex-wife, and his daughter all testified that they believed Anderson to be the owner of the horse. The court, given the opportunity at trial to observe their candor and demeanor, found all three witnesses credible. Judge Grossman also relied on the fact that Anderson was registered as the owner of Clover with the USEF in 2016—more than a year before her father began experiencing financial problems. Based on this evidence as well Mr. Wagner's otherwise thorough schedules, the bankruptcy court concluded that "if Mr. Wagner had any thought or concern that he had some interest in the horse...I'm convinced he certainly would have listed it on his schedules." T. 317:3-7.

24

In the district court, OHI asserted that the evidence conclusively established that the Mr. Wagner was the owner of Clover and, as a result, "the debtor's failure to list Clover, the Clover Lease, and the Clover Lease Payment in his schedules and SOFA mandated sustaining Appellants' objection to discharge under 11 U.S.C. § 727(a)(4)(A)." *OHI's Initial Brief* [DE 13], p. 19. That argument skips over one of the critical elements of § 727(a)(4)(A)—proof of fraudulent intent.  It also ignore the fact that the bankruptcy court went to lengths to explain why the actual ownership of Clover is impossible to ascertain with certainty and unnecessary to ascertain in this case.

The Bankruptcy Court observed that "unlike real estate or a motor vehicle, title to a horse is not required by law to be memorialized in any written document." T. 315.21-24. This left competing evidence before the Court.  OHI proffered that that the 2016 bill of sale and a clause of the 2019 lease suggest that Mr. Wagner owned the horse.  Mr. Wagner proffered that the USEF registration and the consistent testimony of all the Wagners indicated that Anderson was the owner. As Judge Grossman stated, "the nature and extent of any interest Mr. Wagner may have had in Clover as of the petition date, could make for a very interesting academic discussion." T.317:8-11.

But the decision on false oath requires proof of falsity, materiality, knowledge of the representation or omission, and fraudulent intent, and if Clover did belong to Mr. Wagner it leaves knowledge and fraudulent intent still to be proven.  The

bankruptcy court correctly noted that a "determination under 727...is focused on the debtor's intent, and whether the debtor knowingly and fraudulently made a false oath or account." T.317:13-17. In that respect, the matter was straightforward to Judge Grossman: "[T]he evidence shows that George Wagner believed the horse to belong to his daughter, not to him, and that is why he didn't schedule it, not because he knowingly and fraudulently lied on his schedules and the same goes for the $45,000 lease payment." T. 317:21-318:1.

It was the district judge who erred in this case. Here is his summary from the end of his decision to reverse the bankruptcy court:

> Because within one year of filing his bankruptcy petition, Debtor transferred rights he held in Clover to Anderson, Clover should have been specifically disclosed on Debtor's bankruptcy schedules. Given Debtor's thoroughness and attention to detail in the preparation of the schedules generally, omission of Clover was *neither inadvertent nor a mistake.* For these reasons, this Court finds that Debtor knowingly and fraudulently made a false oath under 11 U.S.C. §727(a)(4). Appellants were prevented from receiving completely reliable information about Debtor's estate and therefore, discharge of Debtor should not have been granted.

Order Vacating Judgment, p. 11*[emphasis supplied].* This is a misstatement of the law.[6] The district court has conflated "knowing and fraudulent" into simply "knowing." Even if Mr. Wagner's omission of Clover was neither the result of

---

[6] It is also contains an important misstatement of the evidence. Neither side has ever claimed or offered evidence that Mr. Wagner transferred Clover to Anderson during the year prior to the bankruptcy. OHI says that Mr. Wagner never transferred the horse. Mr. Wagner says he put the horse in Anderson's name a few days after he purchased the horse in 2016.

inadvertence, that is, inattentiveness, or mistake, therefore making it a *knowing* omission, that is a long step short of making it a fraudulent omission.

The district court found that "the bankruptcy court failed to consider all of the circumstances surrounding the omission on the schedules," pointing to several documents which it says spoke to the debtor's state of mind: (1) the lease and bank statements showing that Mr. Wagner must have known that the horse rental income was being paid to him in 2019; (2) an email between Mr. Wagner's employee and his attorney, that was corrected by the attorney, and a personal financial statement listing a valueless horse; and (3)  his estranged wife's email to the insurance agent, R. 12-1: 466 of 941, mentioning that changing the insurance to Anderson's name was "for asset protection."   Mr. Wagner, at trial, explained all these documents, as shown above. The bankruptcy court found his testimony credible, and it found that the lack of fraudulent intent was bolstered by the fact that Mr. Wagner showed a pattern of forthrightness in his schedules and to his trustee.  T. 313:4-9; 317:3-7. The bankruptcy court did *not fail* to consider these documents.  It addressed each one of them and explained why they did not establish fraudulent intent under the circumstances testified to by the Wagners.  See T. 315:5-15, 312:17-23, 312:8-16.

Debtors make choices in every bankruptcy case whether assets belong to them, and sometimes they are wrong and they either don't own an asset they thought they did own or they do own an asset they thought they didn't own.  Although the

bankruptcy judge in this case didn't think it was so clear whether Mr. Wagner owned or didn't own the horse, he made the correct analysis of the law: "fraudulently" means something beyond "knowingly."  Only if Mr. Wagner omitted Clover with the intent to prevent the trustee from administering an asset that Mr. Wagner was concerned the trustee had the right to administer would Mr. Wagner have been "knowingly and fraudulently" making a false oath.

## VI.  CONCLUSION

The importance of the "fresh start" provided by the bankruptcy law has long been recognized.  "A central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v.* 498 U.S. 279, 286 (1991) (citing *Local Loan Co. v. Hunt*, 292 U. S. 234, 244 (1934).

Bankruptcy Judge Alexander Paskay summarized the role of Section 727, in a case often paraphrased by other judges:

> It has been established even prior to the adoption of the Bankruptcy Code that the provisions dealing with discharge of debtors must be generally construed liberally in favor of the debtor and strictly against the creditors. It is equally true, however, that Congress meant to grant a discharge only to the honest debtors and that the discharge provisions should be liberally applied to protect the debtor only where there was no intent to violate the provisions of the law dealing with discharge.

28

*In re Muscatell,* 113 B.R. 72, 73–74 (Bankr. M.D. Fla. 1990) (citing *Kentile Floors, Inc. v. Winham*, 440 F.2d 1128 (9th Cir.1971); *Northern Trust Co. v. Garman (In the Matter of Garman),* 625 F.2d 755 (7th Cir.1980)).

The issues in this appeal are just two.

(1) Whether the district judge erroneously altered the "knowingly and fraudulently" element of Section 727(a)(4)(A) so that a knowing admission—one that is "neither inadvertent nor a mistake"—is necessarily a knowing and fraudulent omission.  This was legal error, which this Court may assess *de novo.*   A finding of fraudulent omissions requires more than knowing omissions.  The evidence did not show that Mr. Wagner both knew that he had an interest in the horse and fraudulently intended to conceal it.

(2)  Whether the bankruptcy judge was clearly erroneous in his finding that Mr. Wagner did not act with a fraudulent state of mind in failing to list the horse Clover or the horse rental income in his schedules.  Fact findings on state of mind issues are rarely, if ever overturned on appeal, and for good reason.  Determining the existence of fraudulent intent in one making a representation (or omission) requires not only looking to extrinsic evidence of admissions by the defendant on the subject but also examining the defendant and other witnesses closely under oath.  In this case, the bankruptcy judge read all of the alleged admissions, considered the circumstances of the time of the alleged omissions, and observed the candor and

demeanor of Mr. Wagner, his ex-wife, and his daughter as they explained why Mr. Wagner thought Anderson owned the horse.  The court in his ruling addressed in particular each item of extrinsic evidence OHI presented, and explained how the evidence may be viewed much more neutrally than OHI argued.  The district court was wrong in ruling that Judge Grossman committed clear error on a factual matter so contested as Mr. Wagner's state of mind in failing to list the horse and failure to specify the rental income.

The appellant respectfully requests this Court reverse the district court order and reinstate the bankruptcy court's judgment.

Respectfully submitted,

GRAYROBINSON, P.A.
Counsel for Appellant
401 E. Las Olas Blvd., Suite 1000
Fort Lauderdale, FL  33301
Email: patrick.scott@gray-robinson.com

s/Patrick S. Scott
Patrick S. Scott
Fla. Bar No. 290025
Ph. 954/761-8111

and

Michael S. Hoffman
HOFFMAN, LARIN & AGNETTI, P.A.
Counsel for Appellant
909 North Miami Beach Blvd., Suite 201
North Miami, FL 33162
Email: mshoffman@hlalaw.com
Ph. 305/653-5555

30

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.      This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 7,295 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Office Professional Plus 2010 in 14-point Times New Roman font.

/s/ Patrick S. Scott
Attorney for Appellant
Dated: February 8, 2023

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of this brief was served by email upon Michael S. Hoffman, Hoffman Larin & Agnetti, P.A., mshoffman@hlalaw.com, Mark D. Hildreth, Shumaker Loop & Kendrick, LLP, mhildreth@shumaker.com, and Leighton Aiken, Ferguson Braswell Fraser Kubasta P.C., laiken@fbfk.law, this 8th day of February, 2023.

s/ Patrick Scott

/15671/1#49483808 v1

31