[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-13642

_____

In re: GEORGE P. WAGNER, III,

                                                    Debtor.

_____

OHI ASSET (VA) MARTINSVILLE SNF, LLC,
OHI ASSET (FL) SEBRING, LLC,
OHI ASSET (VA) MARTINSVILLE ALF, LLC,
OHI ASSET (NC) WARSAW, LP,

                                                    Plaintiffs-Appellees,

versus

GEORGE P. WAGNER, III,

                                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cv-61099-RS,
Bkcy No. 20-bk-01255-SMG

_____

Before JORDAN, BRASHER, and ABUDU, Circuit Judges.

ABUDU, Circuit Judge:

George Wagner III appeals the district court's denial of his discharge for bankruptcy pursuant to 11 U.S.C. § 727(a)(4)(A). Section 727(a)(4)(A) of the Bankruptcy Code precludes a bankruptcy court from granting discharge to a debtor who knowingly and fraudulently makes a false oath in a bankruptcy case. When Wagner filed his voluntary bankruptcy petition, he omitted all reference to a show horse he purchased for his daughter several years preceding his bankruptcy case because, according to Wagner, he believed that the horse belonged to his daughter and not to him. Following a bench trial, the bankruptcy court granted judgment in favor of Wagner and fully discharged his debts. The district court vacated the bankruptcy court's order granting discharge, concluding that Section 727(a)(4)(A) barred Wagner from receiving discharge because he knowingly and fraudulently omitted the horse from his bankruptcy case.

After a thorough review of the record and the parties' briefs, and with the benefit of oral argument, we reverse the district court's order and affirm the bankruptcy court's order of discharge.

**I.    BACKGROUND**

   *A.  Wagner's Cash Management System*

For several years, Wagner's wife, Melissa Wagner, managed their family finances. From 2010 through 2019, Wagner and Melissa owned a joint bank account. The joint account constituted the only bank account Wagner owned, and he deposited his salary and any other income he received into the joint account.

Although Wagner did not have any bank accounts outside of the joint account, Melissa owned a personal savings account. Wagner did not have authority over Melissa's personal savings account, nor did he have access to the funds she placed in it. Because Melissa did not trust Wagner with their finances, she regularly transferred funds out of the joint account and into her personal savings account. Wagner knew of Melissa's frequent transfers and never protested them. However, in June 2019, Melissa filed for divorce, and her monetary transfers between the joint account and her personal savings account ceased.

   *B.  Clover the Show Horse*

In 2016, Wagner used funds from the joint account to buy a show horse for his then-minor daughter, Anderson, who was a competitive horse rider. Four days after purchasing the horse, Wagner registered it with the United States Equestrian Federation

(the "USEF") under Anderson's name. Wagner said that he believed that registering the horse with the USEF qualified as transferring ownership of the horse to Anderson.

Melissa testified that, because Anderson was a minor when Wagner purchased the horse, she paid for the horse's maintenance expenses using funds from the couple's joint account. Additionally, Wagner was listed as the named insured on the horse's insurance policy from its purchase date until June 2019, when he transferred the horse's insurance policy to Anderson.

Further, in February 2019, Wagner leased the horse to another rider for six months pursuant to a written lease agreement. Wagner signed the February 2019 lease agreement in the capacity of the horse's owner. However, Wagner claimed that he signed the lease agreement on behalf of Anderson because she was away at college at the time. After Wagner signed the February 2019 lease, the lease preparer sent Anderson a copy of the lease to re-sign as the horse's owner, but she never signed it.

Wagner deposited the net proceeds from the February 2019 lease agreement into the joint account. Melissa then transferred the lease funds into her personal savings account. In January 2020, Anderson executed a lease agreement to rent the horse to another rider for a year, and she retained the proceeds from that lease.

C. *Wagner's Divorce Proceedings & Prepetition Emails*

In June 2019, when Melissa filed for divorce, the two entered divorce settlement negotiations. During the divorce proceedings, Wagner and Melissa exchanged several email communications

discussing the division of their assets. To facilitate an equitable distribution of their marital assets, Melissa sent Wagner an email dated June 2019, requesting to keep certain marital property. Relevant here, Melissa asked to keep a portion of the couple's money to cover Anderson's expenses for a year, which included the horse's maintenance fees if they were not able to sell the horse. In response, Wagner informed Melissa that he intended to file for bankruptcy and, because he would be unable to discharge any alimony debt that arose from their divorce settlement, Melissa could keep as much of their marital assets as possible. Specifically, he stated that his "only concern was [Melissa] keeping hold of as much as possible and with the bankruptcy [Wagner] having as little as possible," and his bankruptcy attorney "[wa]s working to that goal."

### D. *Wagner's Financial Challenges & Bankruptcy Case*

In the years leading up to his divorce, Wagner began experiencing financial problems. Several businesses in which Wagner held a substantial ownership interest started failing, including a business that defaulted on a lease agreement it held with OHI Asset (VA) Martinsville SNF, LLC, OHI Asset (FL) Sebring, LLC, OHI Asset (VA) Martinsville ALF, LLC, and OHI Asset (NC) Warsaw, LP (collectively "OHI Asset").

In early 2018, OHI Asset sued Wagner in state court to enforce his personal guaranty of debts that one of his defunct businesses owed. After a failed attempt to settle the lawsuit, OHI Asset obtained a large money judgment against Wagner.

On December 6, 2019, Wagner voluntarily filed for Chapter 7 bankruptcy, seeking to discharge business related debt, including OHI Asset's money judgment against him. Wagner did not list the show horse or the income from the February 2019 lease agreement on his bankruptcy petition, schedules, or Statement of Financial Affairs ("SOFA"). However, Wagner provided a list of his income and assets, including the transfers Melissa made from the joint account into her personal savings account from 2017 through 2019, his daughter's 2016 Ford Mustang, his wine collection, his jewelry, and his household goods and furnishings.

After Wagner filed his bankruptcy schedules and SOFA, OHI Asset initiated an adversary proceeding objecting to his discharge. OHI Asset alleged that Section 727(a)(4)(A) barred discharge because Wagner intentionally omitted from his bankruptcy case his ownership interest in the show horse and his financial interest in the February 2019 lease income.

The bankruptcy court conducted a two-day bench trial regarding OHI Asset's objection to discharge. Wagner, Melissa, and Anderson testified during the trial that they each believed Anderson was the owner of the show horse from the moment it was purchased. Specifically, Wagner testified that, although Anderson was the owner of the show horse, Melissa paid for its maintenance using funds from their joint account because Anderson was a minor when they purchased the horse. He further testified that he transferred the horse's insurance policy to Anderson in June 2019 because she was no longer a minor.

22-13642               Opinion of the Court                              7

Additionally, Wagner testified regarding the steps he took to prepare his bankruptcy petition, schedules, and SOFA. He stated that he had his jewelry, wine collection, and household furnishings appraised so that his schedules and bankruptcy documents would reflect their accurate values.

After hearing witness testimony and weighing the evidence presented at trial, the bankruptcy court found that Wagner was entitled to discharge because he did not knowingly and fraudulently make a false oath in his bankruptcy case in omitting the horse from his schedules and SOFA. The bankruptcy court credited Wagner, Melissa, and Anderson's testimony as being supported by the documentary evidence. The bankruptcy court also determined that the actions Wagner took regarding the horse—signing the February 2019 lease on behalf of Anderson while she was away at college, paying for the horse's maintenance expenses, and listing himself as the named insured on the horse's insurance policy until June 2019—were reasonable considering Anderson's minor age. Additionally, the bankruptcy court found that, although the June 2019 emails appeared concerning at first glance, when viewed in light of Wagner's divorce proceedings, they did not support a finding of fraudulent intent. Specifically, the bankruptcy court found Wagner's June 2019 email to Melissa expressing his goal of keeping the fewest of their marital assets, "need[ed] to be viewed in the context of the Wagners' impending divorce, as well as in light of the fairly extensive disclosures and otherwise thoroughness of Mr. Wagner's bankruptcy schedules and [SOFA]." The bankruptcy court reasoned that the USEF registration records, along with Wagner,

Melissa, and Anderson's testimony and the thoroughness of Wagner's bankruptcy schedules demonstrated that he did not possess a fraudulent intent in omitting the horse from his bankruptcy case.

The bankruptcy court entered final judgment in favor of Wagner and granted him discharge. OHI Asset appealed the bankruptcy court's final judgment to the district court.

The district court concluded that the bankruptcy court committed clear error by ignoring evidence in the record that supported a finding that Wagner knowingly and fraudulently made a false oath in his bankruptcy case when he omitted the horse. Specifically, the district court concluded that the June 2019 emails, the timing of Wagner's transfer of the horse's insurance policy to Anderson, and Anderson's signing of the January 2020 lease and retention of the proceeds indicated that Wagner knowingly and fraudulently omitted the horse from his bankruptcy case. The district court explained that the bankruptcy court failed to consider that "it was not until [Wagner] was preparing his bankruptcy petition that the insurance policy's named insured was changed from [Wagner] to Anderson." The district court further explained that the bankruptcy court ignored that, although Wagner asserted that he executed the February 2019 lease agreement and kept the proceeds because Anderson was away at school, Anderson was still away at school when she executed the January 2020[1] lease

---

[1] The district court refers to the second lease agreement for the horse as the "February 2020 lease," however, Anderson signed and executed the lease in January 2020.

agreement and received the proceeds from that lease. Additionally, the district court stated that in signing the February 2019 lease agreement and retaining the lease payments, Wagner represented that he was the horse's owner. The district court concluded that Wagner's actions leading up to his petition date supported a finding that he fraudulently omitted the horse from his bankruptcy case.

Thus, the district court vacated the bankruptcy court's final judgment in favor of Wagner and remanded to the bankruptcy court to enter judgment denying discharge. Wagner now appeals the district court's denial of discharge.[2]

## II.    STANDARD OF REVIEW

---

[2] We raised *sua sponte* a jurisdictional issue in this case considering whether the district court's September 30, 2022, order vacating the bankruptcy court's final judgment and remanding for further proceedings was a final or otherwise appealable order. We also considered whether Wagner's motion for clarification filed in the district court after this appeal began rendered the present notice of appeal ineffective.

We conclude that the district court's September 30, 2022, order was a final or otherwise appealable order because, upon remand, the bankruptcy court was not required to exercise significant judicial activity, or discretion, in carrying out the district court's order. *See* 28 U.S.C. § 1291; *Miscott Corp. v. Zaremba Walden Co. (In re Miscott Corp.)*, 848 F.2d 1190, 1192–93 (11th Cir. 1988). Additionally, we conclude that Wagner's motion for reconsideration did not suspend the finality of the district court's September 30, 2022, order because it did not seek reconsideration of matters encompassed in the merits of the order, nor did it call into question the correctness of the order. *See Finch v. City of Vernon*, 845 F.2d 256, 258–59 (11th Cir. 1988). Thus, we have satisfied ourselves of our jurisdiction to review the instant appeal.

We sit as the second court of review in a bankruptcy appeal, independently examining the bankruptcy court's judgment and applying the same standards as the district court. *Feshbach v. Dep't of Treasury Internal Revenue Serv. (In re Feshbach)*, 974 F.3d 1320, 1327 (11th Cir. 2020). We review the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *PRN Real Est. & Invs., Ltd. v. Cole*, 85 F.4th 1324, 1333 (11th Cir. 2023) (citations omitted). A bankruptcy court's determination that a debtor lacks the requisite wrongful intent under Section 727(a)(4)(A) to deny discharge is a question of fact subject to clear error review. *See Wines v. Wines (In re Wines)*, 997 F.2d 852, 856 (11th Cir. 1993) (citation omitted).

A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (internal quotation marks omitted) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Therefore, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574 (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)). The clearly erroneous standard "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Id.* at 573.

A "reviewing court must afford substantial deference to" findings of fact that "are based on determinations regarding the

credibility of witnesses at a bench trial." *Feshbach*, 974 F.3d at 1328. During bench trials, "only the trial judge can" assess "the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575. Thus, a reviewing court may not set aside a finding of fact that is based on the trial judge's "decision to credit the testimony of one . . . or more witnesses, each of whom . . . told a coherent and facially plausible story that is not contradicted by extrinsic evidence." *Id*. at 575–76; *see also* Fed. R. Bankr. P. 7052; Fed. R. Civ. P. 52(a)(6).

### III. DISCUSSION

#### A. The District Court Did Not Properly Defer to the Bankruptcy Court's Factual Findings

Wagner argues that the district court erred in denying him a discharge because there was substantial evidence to support the bankruptcy court's conclusion that he did not fraudulently omit the horse from his bankruptcy case. We agree.

The general proposition that a reviewing court must afford great deference to a trial court's credibility determination has been well-established by the Supreme Court and this Court. *See, e.g.*, *Anderson*, 470 U.S. at 575; *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993) (explaining that "review under the 'clearly erroneous' standard is significantly deferential" because "the factfinder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most

obvious example."); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984) (stating that reviewing courts must accept a bankruptcy court's factual findings unless they are clearly erroneous because "the trial judge is best able to assess the credibility of the witnesses before him and thus the evidentiary content of their testimony" (citation omitted)); *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 305 (11th Cir. 1994) (stating that a reviewing court must defer to the bankruptcy court's credibility determinations); *PRN Real Est.*, 85 F.4th at 1338 (same).

This proposition is codified in Federal Rule of Civil Procedure 52(a)(6)—and applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7052. Since Congress's enactment of the Federal Rules of Civil Procedure, Rule 52 has discouraged reviewing courts from setting aside findings of fact that are based on a trial court's decision to credit witness testimony. Fed. R. Civ. P. 52(a) (1939) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge . . . the credibility of the witnesses.").

Furthermore, Rule 52(a) has applied in bankruptcy proceedings long before Congress enacted the Federal Rules of Bankruptcy Procedure in 1983. *See* Bankruptcy Rules & Official Forms Under Chapters 1–13 of the Bankruptcy Act (1982) (codified as Fed. R. Bankr. P. 7052) advisory committee's note to Rule 752 (stating that Bankruptcy Rule 752 "is an adaption of Rule 52 of the Federal Rules of Civil Procedure. Rule 52 has been frequently applied in adversary proceedings in bankruptcy cases."). After the Federal

Rules of Bankruptcy Procedure's promulgation, Rule 52 became—and remains—mandatory in adversary proceedings. *See* Fed. R. Bankr. P. 7052 (2023) ("Rule 52 F. R. Civ. P. applies in adversary proceedings."). This standard binds the district court, sitting as a court of review of the bankruptcy court's judgment.

Here, the bankruptcy court primarily based its ruling on a credibility determination, to which it was duly entitled deference under Rule 52(a) and our precedent. The record shows that, rather than deferring to the weight that the bankruptcy court accorded Wagner, Melissa, and Anderson's testimony and its interpretation of the documentary evidence, the district court weighed the evidence anew and made its own factual findings—an endeavor neither it nor we have authority to undertake sitting as a reviewing court of the bankruptcy court's decision. *See Law Sols. of Chi. LLC v. Corbett*, 971 F.3d 1299, 1304 (11th Cir. 2020) ("Neither the district court nor this court may make independent factual findings." (internal quotation marks and citation omitted)).

The district court concluded that Wagner possessed the requisite fraudulent intent in making a false oath in his bankruptcy case based on (1) Wagner's June 2019 email correspondences; (2) the timing between when he changed the named insured on the horse's insurance policy to Anderson, and when Anderson executed the January 2020 lease; and (3) Wagner's retention of proceeds from the horse. However, the bankruptcy court, after listening to the testimony that Wagner, Melissa, and Anderson provided at trial, found that although Wagner may have knowingly omitted

the horse from his bankruptcy case, their testimony sufficiently rebutted the presumption that he omitted the horse with a fraudulent intent. The bankruptcy court credited their testimony that they all believed the horse was Anderson's property. *See Anderson*, 470 U.S. at 575–76 (explaining that a finding of fact is not clearly erroneous if that finding is based on the trial judge's "decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence"). The bankruptcy court also found that the extrinsic evidence, namely Wagner's June 2019 email to Melissa expressing his goal of keeping the fewest of their marital assets and transferring the horse's insurance policy to Anderson that same month, did not contradict testimony provided by Wagner, Melissa, and Anderson. Although the district court concluded that the June 2019 emails where Wagner discussed his goal of retaining as few assets as possible in light of his impeding bankruptcy evinced fraudulent intent, the bankruptcy court explained that the June 2019 emails, when viewed against the backdrop of his divorce proceedings, did not support such a finding.

Similarly, the bankruptcy court rejected any suggestion that Wagner's timing in changing the named insured on the horse's insurance policy indicated fraudulent intent. The bankruptcy court reasoned that for the majority of the time that Wagner was listed as the named insured, Anderson was a minor, and it was not until she became an adult that she became the named insured. Further, at the time that Wagner signed the February 2019 horse lease, Anderson was away at college and, although the lease was sent to her

22-13642               Opinion of the Court                        15

to re-sign, she neglected to re-sign it. Moreover, the bankruptcy court determined Melissa's transfer of the bulk of the February 2019 lease proceeds from the joint account to her personal savings account failed to show Wagner knowingly and fraudulently failed to disclose the lease payments. Melissa's rationale for the transfer—preserving the funds for future horse expenses—is consistent with the Wagners' cash management practices where Melissa routinely transferred money from the joint account to her personal account out of distrust of Wagner with the money; the Wagners' practice and explanation of paying for horse expenses through 2019 because Anderson lacked an income of her own; and their testimony that the horse belonged to Anderson.

Thus, the bankruptcy court—as the trial court—was best suited to appreciate the nuances of the witnesses' demeanor that bore on the court's credibility determination. *See Anderson*, 470 U.S. at 575. Deference to the bankruptcy court's findings in this case was particularly appropriate because proving or refuting fraudulent intent depended on the bankruptcy court's credibility determination. *See Miller*, 39 F.3d at 305; *see also Kane v. Stewart Tilghman Fox & Bianchi, P.A. (In re Kane)*, 755 F.3d 1285, 1298 (11th Cir. 2014) (stating that "the intent determination" under § 727(a)(2) "will often depend on th[e] [bankruptcy] court's assessment of the debtor's credibility" (citation omitted)).

Because the bankruptcy court's view of these facts was logical, plausible, and supported by the record, the district court misapplied the clearly erroneous standard in substituting its view of

the evidence for the bankruptcy court's. *See Anderson*, 470 U.S. at 573 ("The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court."). *See also id.* at 577 (explaining that where two differing interpretations are neither illogical or implausible and each interpretation "has support in inferences that may be drawn from the facts in the record; and if either interpretation has been drawn by a [trial] court[,]" a court of review cannot find the trial court's finding to be clearly erroneous). "A finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern." *Cooper v. Harris*, 581 U.S. 285, 293 (2017) (citation omitted).

B.  *The Bankruptcy Court Properly Granted Wagner a Discharge*

Because we sit as a second court of review, we review "the bankruptcy court's judgment anew, employing the same standard of review" as the district court. *Lunsford v. Process Techs. Servs., LLC (In re Lunsford),* 848 F.3d 963, 966 (11th Cir. 2017) (citation omitted). The Bankruptcy Code provides a "fresh start" for the "honest but unfortunate debtor." *Mass. Dep't of Revenue v. Shek (In re Shek)*, 947 F.3d 770, 773 (11th Cir. 2020) (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007)). "To ensure that only the deserving debtor receives the benefits of" bankruptcy relief, Congress enacted several exceptions to discharge. *Fesbach*, 974 F.3d at 1327. Section 727(a)(4)(A) of the Bankruptcy Code prohibits the bankruptcy court from granting discharge to a debtor who "knowingly *and* fraudulently . . . made a false oath or account" in a bankruptcy case. (emphasis added). "A debtor can make a false oath in his petition,

in his schedules, . . . and when giving sworn testimony." *PRN Real Est.*, 85 F.4th at 1339.

A debtor's deliberate omissions may constitute a false oath barring discharge under Section 727(a)(4)(A). *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991) (citing *Chalik*, 748 F.2d at 618). "The false oath must be fraudulent and material." *PRN Real Est.*, 85 F.4th at 1339–40 (citing *Chalik*, 748 F.2d at 618). A false oath is "'material' . . . if it bears a relationship to the [debtor]'s business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of his property." *Chalik*, 748 F.2d at 618 (citation omitted).

An objecting party has the burden of proving that a debtor is not entitled to discharge pursuant to Section 727(a)(4)(A). *See Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1339 (11th Cir. 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 289–91 (1991)). Once the objecting party "meets the initial burden by providing evidence establishing the basis for [its] objection, the burden shifts to the debtor" to provide a credible explanation that he is entitled to discharge. *Chalik,* 748 F.2d at 619. Because "a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor, deference to the bankruptcy court's factual findings is particularly appropriate." *Miller*, 39 F.3d at 305 (internal quotation marks and citation omitted). In this case, the bankruptcy court did not clearly err in determining that Wagner was entitled to discharge because he did not knowingly and fraudulently make a false oath in his bankruptcy case.

## IV.   CONCLUSION

Based on the foregoing, we **REVERSE** the district court's order and **AFFIRM** the bankruptcy court's order of discharge.

**REVERSED.**